



FILED

JUL 15 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF CALIFORNIA

3    SACRAMENTO DIVISION

4    In re:                        )    Case No. 09-25849-B-13
                                   )
5    JUN VILLANUEVA and            )
     RUCCELL VILLANUEVA,           )
6                                  )    Adversary No. 10-2045-B
            Debtor(s).             )
7    _____)    DCN N/A
     JUN VILLANUEVA, et al.,       )
8                                  )
            Plaintiff(s),          )
9                                  )    Date:  November 18, 2010
     vs.                           )    Time:  11:30 a.m.
10                                 )    Place: U.S. Courthouse
     MORTGAGE ELECTRONIC SYSTEM,   )           Courtroom 32
11   INC., et al.,                 )           501 I Street
                                   )           Sacramento, CA 95814
12          Defendant(s).          )
                                   )
13   _____)

14   **MEMORANDUM DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS**

15       This matter came on for final hearing on November 18, 2011,

16   at 11:30 a.m.  Appearances are noted on the record.  At the

17   conclusion of the hearing the court took the matter under

18   submission.   The following constitutes the court's findings of

19   fact and conclusions of law, pursuant to Federal Rule of

20   Bankruptcy Procedure 7052.

21                              **DECISION**

22       The motion is granted in part and denied in part to the

23   extent set forth herein.  The motion's request for judgment on

24   the pleadings pursuant to Fed. R. Civ. P. 12(c) is denied as to

25   all claims for relief.  The motion's requests, pursuant to Fed.

26   R. Civ. P. 12(h)(2) and (b)(6), for dismissal of the first,

27

28                              -1-

1  second, fourth and fifth claims for relief contained in the first
2  amended complaint filed on June 30, 2010 (Dkt. 30)(the "FAC"),
3  are granted as to moving defendants Mortgage Electronic System,
4  Inc. ("MERS"), IMB HoldCo, LLC ("IMB HoldCo"), IMB Management
5  Holdings, LLP  ("IMB Management"), OneWest Bank Group, LLC
6  ("OneWest Group") and OneWest Venture, LLC ("OneWest Venture"),
7  and those claims are dismissed as to defendants MERS, IMB HoldCo,
8  IMB Management, OneWest Group and OneWest Venture without leave
9  to amend.   The motion's requests, pursuant to Fed. R. Civ. P.
10 12(h)(2) and (b)(6), for dismissal of the first, second, fourth
11 and fifth claims for relief as to moving defendant OneWest Bank,
12 FSB ("OneWest Bank") are granted as to defendant OneWest Bank
13 with leave to amend.   The motion's request for dismissal of the
14 third claim for relief as to defendants MERS, IMB HoldCo, IMB
15 Management, OneWest Group, OneWest Venture and OneWest Bank
16 (collectively, the "Moving Defendants") is granted as to Moving
17 Defendants without leave to amend.   On or before August 12, 2011
18 the plaintiffs shall file a second amended complaint that is
19 consistent with this ruling.   If the plaintiffs wish to include
20 in the complaint claims for relief against any or all of MERS,
21 IMBHoldCo, IMB Management, OneWest Group and OneWest Venture, the
22 plaintiffs shall file a motion requesting permission to include
23 those defendants in the second amended complaint, shall file and
24 serve said motion on or before August 5, 2011, and shall set said
25 motion on the first available calendar which provides proper
26 notice to parties in interest.   If filed, the motion to amend
27
28                              -2-

1   shall set forth the specific factual allegations which the

2   plaintiffs would include in the second amended complaint as to

3   those parties which the plaintiffs seek to include as named

4   defendants.  If filed, the motion to amend will also toll the

5   August 12, 2011 deadline for filing the second amended complaint

6   set forth above pending the resolution of the hearing on the

7   motion to amend.

8                       **FACTUAL BACKGROUND**

9        By this motion, Moving Defendants move for judgment on the

10  pleadings under Fed. R. Civ. P. 12(c), made applicable to this

11  adversary proceeding by Fed. R. Bankr. P. 7012.

12       The FAC alleges five causes of action for 1.) Declaratory

13  Relief, 2.) Violation of 11 U.S.C. § 362(a), 3.) Violation of 11

14  U.S.C. § 362(k)(1), 4.) Violation of the Real Estate Settlement

15  Procedures Act ("RESPA"), and 5.) Civil Conspiracy.

16       The FAC grounds its claims for relief on the following

17  alleged facts.  The plaintiff debtors Jun and Ruccell Villanueva

18  (the "Debtors") own real property located at 6608 Salvaterra

19  Circle, Elk Grove, California (the "Property").  The Property is

20  the Debtors' personal residence.  On March 10, 2006, the Debtors

21  executed an adjustable rate promissory note (the "Note") payable

22  to the order of Pro30 Funding, Inc. ("Pro30") for the purpose of

23  obtaining a loan.  The Debtors executed a deed of trust (the

24  "Deed of Trust") encumbering the Property to secure the Note.

25  The terms of the Note required monthly payments over thirty years

26  based on payment options including a payment comprised only of

27

28                           -3-

accrued interest, a payment comprised of fully amortized
principal and interest, or a payment comprised of amortized
principal and interest over a fifteen-year term.  The Debtors
allege that the Note and Deed of Trust "did not specifically
include either property taxes nor [sic] property insurance by
escrow."  FAC, ¶ 30.

The FAC alleges that Pro30 is no longer in business, but at
the time the loan was made it allegedly "specified service of the
loan" by MERS.  Although not specifically alleged, the FAC
strongly implies that The Note and Deed of Trust were later
assigned to IndyMac Bank, FSB ("IndyMac").  IndyMac was
subsequently closed by the Federal Deposit Insurance Corporation
and a new entity, IndyMac Federal Bank, FSB ("IndyMac Federal"),
a "bridge bank," was formed to which the assets of IndyMac,
including the Note and Deed of Trust, were transferred.  The Note
and Deed of Trust, along with other assets of IndyMac were then
allegedly "passed through" IMB HoldCo, IMB Management, OneWest
Venture and OneWest Group to OneWest Bank.

The Debtors commenced a chapter 13 bankruptcy case (the
"Bankruptcy Case") on March 31, 2009.  The Debtors allege that
"Defendant, as a matter of normal business practice, conducts an
'Escrow Analysis' pursuant to RESPA upon notice of a bankruptcy
filing."  FAC, ¶ 47.  An escrow analysis allegedly analyzes the
advances made by the lender in the twelve months prior to the
bankruptcy filing for the purposes of paying of property taxes,
insurance and other costs related to the security for a loan and

-4-

projects those costs into the future in order to determine the
amount that the borrower will be required to pay for those costs
in the future.  The escrow analysis also allegedly compares the
amounts advanced by the lender for these costs to the amounts
paid into an escrow account by the borrower for payment of those
costs; if the result shows that the lender has advanced funds in
excess of what the borrower has paid into the escrow account, the
lender will generate a notice of a post-petition increase in the
regular monthly mortgage payment.  The increase is allegedly
intended to recoup the advances paid by the lender in excess of
the payments made by the borrower to the escrow account.  The
notices specifying the post-petition increases in payments are
sent to the debtor borrower and the chapter 13 trustee.

The Debtors allege that as a result of receiving a notice of
a post-petition payment increase, the chapter 13 trustee takes
action which results in the collection by the trustee of the
increased payment as specified in the lender's notice, which
action includes objections to confirmation or motions to dismiss
if the debtor is not proposing to pay the full amount of the
increased payment.  The Debtors allege that in generating and
sending the notices based on post-petition escrow analyses as
described above, the "Defendants" fail to distinguish between
pre- and post-petition escrow advances and improperly collect on
a claim for a pre-petition debt through the ongoing monthly
mortgage payment.  The Debtors allege that this practice violates
the automatic stay of 11 U.S.C. § 362(a).

1    In this case, the Debtors allege that named defendant
2  IndyMac Federal Bank, FSB ("IndyMac Federal") generated an escrow
3  account disclosure statement on "November 14, 2009," which
4  statement reflected a pre-petition increase in the Debtors'
5  monthly payment to a total payment amount of $3,388.34, comprised
6  of $1,781.15 in principal, and interest, $514.06 for escrow items
7  and $1,093.13 included for the purpose of recovering an escrow
8  shortage.[1]  The debtors also allege that on April 29, 2009
9  "Defendants" provided the debtors and the chapter 13 trustee with
10  a notice under RESPA showing a new total payment of $2,782.68,
11  effective as of April 2009.

12    The debtors allege that OneWest Bank filed a secured claim
13  (the "Claim") in the Bankruptcy Case on or about May 8, 2009 "on
14  behalf of IndyMac Bank, FSB's [sic] its assignees and/or
15  successors in interest."  FAC, ¶ 34.  The Claim is filed in the
16  amount of $551,752.65.  The Claim includes a claim for pre-
17  petition arrears in the amount of $29,204.40.  The claim for pre-
18  petition arrears include five "regular monthly payments" in the
19  amount of $1,781.15 for the months of August, 2008 to December,
20  2008, three "regular monthly payments" for the months of January
21  2009 through March 2009 in the amount of $3,388.34, and $8,810.09
22  for "escrow advance."

23    On May 27 2009, "Defendants," on behalf of "OneWest Bank,

---

25    [1]The allegation that the "pre-petition" escrow account
26  disclosure statement was generated on November 14, 2009 is
     internally inconsistent, since the debtors filed their bankruptcy
27  petition on March 31, 2009.

28                                    -6-

1  FSB, fka IndyMac Federal Bank, FSB, its assignees and/or

2  successors" allegedly objected the Debtors' motion to confirm

3  their chapter 13 plan filed on April 13, 2009.

4       On June 10, 2009, IndyMac Mortgage Services, allegedly a

5  division of OneWest Bank, responded to a qualified written

6  request made by the Debtors with a Customer Account Activity

7  Statement that showed that the Debtors' mortgage payment was

8  $1,781.15, and the escrow account balance was $13,631.66.  On or

9  about June 16, 2009, the chapter 13 trustee objected to

10 confirmation of the Debtors' chapter 13 plan "based on

11 feasibility."  Confirmation of the plan was denied on September

12 18, 2009.

13      The debtors also allege that on or about September 14, 2009

14 "Defendants" admitted that the escrow advance of $8,810.09 listed

15 in the Claim was attributable to an escrow shortage balance of

16 $7,267.94 and a pre-petition tax balance of $1,542.15, and that

17 the Debtors' post-petition payment should be $1,781.15,

18 consisting of principal and interest.  The Debtors subsequently

19 confirmed a chapter 13 plan on December 9, 2009.

20      The Debtors also allege that the Defendants' violated RESPA

21 by (1) failing to notify the Debtors when the note and deed of

22 trust were transferred; (2) assessing more "risk" in the

23 Defendants' escrow analysis calculations than is allowed by

24 RESPA; (3) improperly accessing the escrow account for payment of

25 property taxes and insurance; (4) failing to credit back charges

26 improperly force-placing insurance when the Debtors had paid for

27

28                                -7-

1　insurance themselves; and (5) performing an improper escrow

2　analysis that resulted in incorrect notices of increase in

3　payments.　The Debtors specifically cite 12 U.S.C. § 2604 as the

4　basis for their claims for RESPA violations.

5　　　　Finally, the Debtors allege that the "Defendants," were

6　engaged in a civil conspiracy for the purpose of "recouping pre-

7　petition claims from post-petition estate property resulting in

8　systematic injury to debtor" by means of the allegedly improper

9　escrow analyses described above, concealing the post-petition

10　collection of pre-petition claims, and objecting to confirmation

11　of chapter 13 plans based on the improper escrow analyses.

12　　　　In addition to the facts alleged by the Debtors in the FAC

13　summarized above, the court takes judicial notice of the Escrow

14　Account Disclosure Statement generated by IndyMac Federal dated

15　April 23, 2009 (the "Statement")(Dkt. 58 at 2) and the Deed of

16　Trust dated March 10, 2006 (Dkt. 56 at 2), a copies of which was

17　submitted by the Moving Defendants with this motion.　In the

18　Ninth Circuit, a court may consider a writing referenced in a

19　complaint but not explicitly incorporated therein if the

20　complaint relies on the document and its authenticity is

21　unquestioned.　Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th

22　Cir.1998), superseded by statute on other grounds as stated in

23　Abrego v. Dow Chem. Co., 443 F.3d 676 (9th Cir.2006); see also

24　Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.2001).　In

25　this case, both the Escrow Account Disclosure Statement and the

26　Deed of Trust are referenced in the FAC but are not explicitly

27

28　　　　　　　　　　　　　　　　-8-

1   incorporated therein.  The Debtors do not question the

2   authenticity of either document.

3         Having taken judicial notice of the Deed of Trust, the court

4   notes, contrary to the Debtors' allegations in the FAC, that the

5   Deed of Trust does provide as part of its uniform covenants that

6   the Debtors shall pay the lender periodic payments of amounts due

7   for taxes, assessements, items that can attain priority over the

8   Deed of Trust as a lien or encumbrance on the Property, and

9   insurance premiums.  (Dkt. 56 at 5).

10        The court also takes judicial notice of the fact that,

11  contrary to the Debtors' allegations, on May 11, 2009, OneWest

12  Bank filed a proof of claim (the "Claim") in the Bankruptcy Case.

13  The Claim appears as claim number 1 in the claims register for

14  the Bankruptcy Case.  Having taken judicial notice of the filing

15  of the Claim, the court takes further notice that, contrary to

16  the debtors' allegations, the Claim was filed on May 11, 2009,

17  not May 8, 2009, and that OneWest Bank filed the Claim "fka

18  IndyMac Federal Bank, FSB" and not "on behalf of" IndyMac Bank,

19  FSB or any other entity.

20

21                            **ANALYSIS**

22  The Law Applicable to A Motion For Judgment on the Pleadings

23        A judgment on the pleadings under Rule 12(c) "is properly

24  granted when, taking all the allegations in the pleadings as

25  true, the moving party is entitled to judgment as a matter of

26  law." Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir.

27

28                            -9-

1   1998).   Although the caption of this motion indicates that it is

2   a motion for a judgment on the pleadings pursuant to Rule 12(c),

3   the motion and the prayer contained in the supporting memorandum

4   of points and authorities requests dismissal of the FAC without

5   leave to amend.   However, pursuant to Fed. R. Civ. P. 12(h)(2),

6   a motion made pursuant to Rule 12(c) may be used to raise a

7   defense under Fed. R. Civ. P. 12(b)(6) that a complaint fails to

8   state a claim upon which relief may be granted.   In this case,

9   the Defendants raised a defense under Rule 12(b)(6) as their

10  first affirmative defense in their answer to the FAC filed on

11  July 15, 2010 (Dkt. 92 at 17).

12          The following sets forth the legal standard for dismissal of

13  a complaint where the complaint fails to state a claim on which

14  relief may be granted:

15

16          The purpose of a motion to dismiss under Rule 12(b)(6) of

17          the Federal Rules of Civil Procedure, made applicable here

18          under Fed. R. Bankr. P. 7012, is to test the legal

19          sufficiency of a plaintiff's claims for relief.   In

20          determining whether a plaintiff has advanced potentially

21          viable claims, the complaint is to be construed in a light

22          most favorable to the plaintiff and its allegations taken as

23          true.  Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40

24          L.Ed.2d 90 (1974);  Church of Scientology of Cal. v. Flynn,

25          744 F.2d 694, 696 (9th Cir.1984). . .

26

27

28                                  -10-

1   Quad-Cities Constr., Inc. v. Advanta Bus. Servs. Corp. (In re

2   Quad-Cities Constr., Inc.), 254 B.R. 459, 465 (Bankr. D. Idaho

3   2000).

4          In addition, under the Supreme Court's most recent

5   formulation of Rule 12(b)(6), a plaintiff cannot "plead the bare

6   elements of his cause of action, affix the label 'general

7   allegation,' and expect his complaint to survive a motion to

8   dismiss." Ashcroft v. Iqbal,129 S .Ct 1937, 1954 (2009).

9   Instead, a complaint must set forth enough factual matter to

10  establish plausible grounds for the relief sought. See Bell Atl.

11  Corp. v. Twombly, 127 S.Ct. 1955, 1964-66 (2007). ("[A]

12  plaintiff's obligation to provide 'grounds' of his 'entitle[ment]

13  to relief requires more than labels and conclusions, and a

14  formulaic recitation of the elements of a cause of action will

15  not do."). Factual allegations must be enough to raise a right

16  to relief above the speculative level. Id., citing to 5 C.

17  Wright & A. Miller, Fed. Practice and Procedure § 1216, at 235-36

18  (3d ed. 2004) ("[T]he pleading must contain something more. . .

19  than . . . a statement of facts that merely creates a suspicion

20  [of] a legally cognizable right of action").

21         In addition, the court notes the following:

22

23         A dismissal under Rule 12(b)(6) may be based on the

24         lack of a cognizable legal theory or on the absence of

25         sufficient facts alleged under a cognizable legal

26         theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

27

28                              -11-

2001); <u>Balistreri v. Pacifica Police Dep't.</u>, 901 F.2d
696, 699 (9th Cir. 1988). . . . the Court is not required
"to accept as true allegations that are merely
conclusory, unwarranted deductions of fact, or
unreasonable inferences." <u>Sprewell v. Golden State</u>
<u>Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). Courts
will not "assume the truth of legal conclusions merely
because they are cast in the form of factual
allegations." <u>Warren v. Fox Family Worldwide, Inc.</u>, 328
F.3d 1136, 1139 (9th Cir. 2003); <u>accord</u> <u>W. Mining</u>
<u>Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).
Furthermore, courts will not assume that plaintiffs
"can prove facts which [they have] not alleged, or that
the defendants have violated . . . laws in ways that
have not been alleged." <u>Assoc. Gen. Contractors of</u>
<u>Cal., Inc. v. Cal. State Council of Carpenters</u>, 459
U.S. 519, 526; 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).
. .

<u>Toscano v. Ameriquest Mortg. Co.</u>, 2007 U.S. Dist. LEXIS 81884
(E.D. Cal. 2007).

A motion for judgment on the pleadings under Rule 12(c) is
"essentially equivalent to a Rule 12(b)(6) motion to dismiss, so
a district court may 'dispose of the motion by dismissal rather
than judgment.'" <u>Technology Licensing Corp. v. Technicolor USA,</u>
<u>Inc.</u>, 2010 WL 4070208 (E.D. Cal. Oct. 18, 2010)(quoting <u>Sprint</u>

-12-

1  *Telephony PCS, L.P. v. County of San Diego*, 311 F.Supp.2d 898,

2  902-03 (S.D.Cal.2004)).

3      If a Fed. R. Civ. P. 12(b)(6) motion to dismiss is granted,

4  "[the] court should grant leave to amend even if no request to

5  amend the pleading was made, unless it determines that the

6  pleading could not possibly be cured by the allegation of other

7  facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

8  banc), quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.

9  1995). In other words, the court is not required to grant leave

10 to amend when an amendment would be futile. See *Toscano*, 2007

11 U.S. Dist. LEXIS 81884 (*citing Gompper v. VISX, Inc.*, 298 F.3d

12 893, 898 (9th Cir. 2002)). Similarly, a court may also grant

13 leave to amend in response to a Rule 12(c) motion "if the

14 pleadings can be cured by further factual enhancement."

15 *Technology Licensing Corp.*, 2010 WL 4070208 at *3.

16

17              Dismissal of Non-OneWest Bank

18        Moving Defendants Without Leave to Amend

19      Before turning to an analysis of each of the enumerated

20 claims for relief set forth in the FAC, the court first addresses

21 the inclusion of named defendants IMB HoldCo, IMB Management,

22 OneWest Group and OneWest Venture (collectively, the "Non-OneWest

23 Bank Defendants") in the FAC, which parties were not named as

24 defendants in the initial complaint filed on February 3, 2010.

25 The FAC identifies the Non-OneWest Bank Defendants and alleges

26 that each of the Non-OneWest Bank Defendants held an interest in

27

28                        -13-

the loan at some time or provided loan servicing, but does not contain any specific allegations relating to conduct of the Non-OneWest Bank Defendants with respect to the Bankruptcy Case. Instead, considering the allegations in the FAC and the matters of which the court has taken judicial notice, of the Moving Defendants only OneWest Bank filed a proof of claim in this case.

To the extent that any conduct of the Non-OneWest Bank Defendants is alleged in the FAC at all, the Non-OneWest Bank Defendants are only vaguely and ambiguously identified with the label "Defendants," "Defendant" or "defendant." In light of the allegations in the FAC and those matter of which the court has taken judicial notice which indicate that OneWest Bank is the only named defendant which has actively sought to enforce a claim in this case, and which indicate that IndyMac Federal is the only named defendant which sent the debtors a post-petition notice regarding their mortgage payment, the Debtors' vague allegations are insufficient to state any plausible claim for relief against the Non-OneWest Bank Defendants.


Dismissal of Third Claim for Relief (Violation of 11 U.S.C. §
362(k)(1)) Without Leave to Amend

The Defendants' request for judgment on the pleadings with respect to the third claim for relief is denied, and the claim is dismissed without leave to amend as to all named defendants, but without prejudice to the inclusion of a claim for violation of the automatic stay in an amended complaint, as discussed, _infra_,

-14-

in connection with the second claim for relief.

The third claim for relief alleges a violation of 11 U.S.C. § 362(k)(1). Section 362(k)(1), however, does not create a right of action but governs the available remedies and measure of damages for a violation of a stay provided by § 362. As a result, because the Debtors cannot state a claim for a violation of § 362(k)(1), the claim is dismissed without leave to amend.

<u>Dismissal of OneWest Bank With Leave to Amend</u>

Having addressed the Debtors' allegations with respect to the Non-OneWest Bank Defendants, the court now addresses each of the Debtors' first, second, fourth and fifth claims for relief with respect to OneWest Bank.

*1. First Claim for Relief: (Declaratory Relief)*

This claim for relief is dismissed as to OneWest Bank with leave to amend.

The facts alleged by the Debtors establish the existence of a dispute between the Debtors and some, if not all, of the named defendants regarding the correct amount of the ongoing monthly payments to be made by the Debtors under her note and deed of trust obligations, the correct method by which the escrow analysis should be prepared, and the proper amount of the pre-petition claim based on the note and deed of trust obligation.

The first claim for relief fails, however, to distinguish adequately among the named defendants with respect to the

aforementioned disputes.  The Debtors have not alleged facts
supporting a need for declaratory relief between themselves and
all of the named defendants, and, as a result, the defendants
have not been given fair notice of the claims being alleged
against each of them.  See Erickson v. Pardus, 551 U.S. 89, 93
(2007)(under Fed. R. Civ. P. 8, the plaintiff need only provide a
short and plain statement of the claim for relief, but must also
give the defendant fair notice of the claims being alleged
against it).  The Debtors' allegations that a controversy exists
between themselves and "Defendants" is insufficient.  It appears,
based on the Debtors' general allegations, that their claim for
declaratory relief is relevant only to the Debtors and OneWest
Bank, the only entity alleged to have taken an active role in
enforcing the Claim in ths bankruptcy case.  However, the Debtors
are given leave to amend to clarify the exact nature of the
dispute between themselves and each of the remaining named
defendants, to the extent such a dispute exists.

  2.  *Second Claim for Relief (Violation of 11 U.S.C. § 362(a))*
       This claim for relief is dismissed as to OneWest Bank with
leave to amend.
       The Moving Defendants argue that the facts alleged by the
Debtors do not constitute a violation of the automatic stay of 11
U.S.C. § 362(a).  The Moving Defendants point out that the FAC
does not allege the sending of any post-petition notices under
RESPA to the debtors, and that, at most, the Debtors are claiming

1   that the filing of an allegedly erroneous proof of claim

2   constitutes a violation of the automatic stay.

3       The Moving Defendants rely heavily on the recent decision of

4   the Ninth Circuit Bankruptcy Appellate Panel in In re Zotow, 432

5   B.R. 252 (9th Cir. BAP 2010).  The facts underlying Zotow are

6   similar to those alleged in the instant adversary proceeding.

7   The Zotows were debtors in chapter 13 who objected to a proof of

8   claim filed by BAC Home Loans Servicing, LP ("BAC").  The Zotows

9   objected to BAC's claim on the ground that the Zotows' pre-

10  petition escrow account shortages should have been listed in the

11  proof of claim.  Rather than include the shortage in the proof of

12  claim, BAC had instead performed an escrow analysis and had sent

13  the debtors and the chapter 13 trustee a post-petition notice

14  which indicated an increase in their ongoing monthly installment

15  payment into the escrow account due to the pre-petition shortage.

16  The notice stated that it was being furnished for informational

17  purposes only and should not be construed as an attempt to

18  collect against the debtors personally.  The notice also stated

19  that if the debtors were involved in a chapter 13 proceeding the

20  debtors were required to obey all orders of the court in the

21  event that the amount specified in the notice conflicted with any

22  order or requirement of the court.  Based on the notice, the

23  chapter 13 trustee made several ongoing post-petition installment

24  payments to BAC from the debtors' plan payments based on the

25  amount of the payments as specified in the notice.  The chapter

26  13 trustee also objected to confirmation of the debtors' chapter

27

28                              -17-

1   13 plan on the ground that the debtors' proposed plan payment was

2   insufficient to fully fund the plan based on the increased

3   payment amount set forth in the notice sent by BAC.

4       The debtors argued that BAC's attempt to collect the escrow

5   shortage, a pre-petition debt, by increasing the ongoing post-

6   petition installment payment through the chapter 13 plan rather

7   than including the escrow shortage in the proof of claim

8   constituted a violation of the automatic stay. Following an

9   evidentiary hearing the bankruptcy court concluded that BAC

10   should have included the pre-petition escrow shortage in its

11   proof of claim, but also found that BAC had not violated the

12   automatic stay.

13       The BAP affirmed the bankruptcy court's conclusion that BAC

14   had not violated the automatic stay. As the BAP stated,

16       the automatic stay does not prevent all communications

17       between a creditor and the debtor. Morgan Guar. Trust Co. of

18       N.Y. v. Am. Sav. and Loan Ass'n, 804 F.2d 1487, 1491 (9th

19       Cir.1986); Connor v. Countrywide Bank, N.A. (In re Connor),

20       366 B.R. 133, 136 (Bankr.D.Hawaii 2007). Whether a

21       communication is a permissible or prohibited one is a

22       fact-driven inquiry which makes any bright line test

23       unworkable. See Henry v. Assocs. Home Equity Servs., Inc.,

24       272 B.R. 266, 278 (C.D.Cal.2002) (whether creditor's

25       activities involved coercion or harassment is fact-specific

26       inquiry); Cousins v. CitiFinancial Mortgage Co. (In re

28       -18-

1    <u>Cousins)</u>, 404 B.R. 281, 287 (Bankr.S.D.Ohio 2009) (noting

2    that determining whether a violation of the automatic stay

3    occurs can be complicated).

4

5 <u>Zotow</u>, 432 B.R. at 258.

6      The BAP went on to identify prohibited communications as

7 "those where direct or circumstantial evidence shows the

8 creditors actions were geared toward collection of a pre-petition

9 debt, were accompanied by coercion or harassment, or otherwise

10 put pressure on the debtor to pay. . . . [M]ere requests for

11 payment and statements simply providing information to a debtor

12 are permissible communications that do no run afoul of the stay."

13 <u>Id.</u> "In the end, one distinguishing factor between permissible

14 and prohibited communications is evidence indicating harassment

15 or coercion.  When such evidence is present, a disclaimer on the

16 communication that it was being sent 'for informational purposes

17 only' is ineffective."  <u>Id.</u> at 259.  The BAP identified three

18 significant facts in <u>Zotow</u> that informed its conclusion that the

19 post-petition notice sent by BAC did not violate the automatic

20 stay: (1) the notice was not in the nature of an invoice and

21 merely set forth the fact of the debt; (2) BAC did not send the

22 notice with a payment coupon or envelope and without any

23 informational component; and (3) BAC sent only one notice to the

24 debtors, and the information contained in that notice was

25 information that the debtors would need to propose a feasible

26 chapter 13 plan.  <u>Id.</u> at 259-60.  The <u>Zotow</u> court also found that

27

28                          -19-

BAC did not violate the automatic stay by receiving increased post-petition payments from the chapter 13 trustee.

In the instant case, the Statement submitted by the Moving Defendants states in two places that it is not being used to collect a debt, but is for informational purposes only. It also states that IndyMac Federal, which sent the statement to the Debtors, calculated an anticipated escrow shortage of $5,849.63 by the end of April, 2009 if the Debtors did not plan to pay the increased monthly payment specified in the statement or pay the escrow shortage in a lump sum. The statement stated that IndyMac Federal "required" the escrow balance to be $1,028.05 by the end of Apri, 2009. The statement also states that if the Debtors wanted to pay the escrow shortage in a lump sum, they should return it to IndyMac Federal with the coupon attached to the Statement. As in <u>Zotow</u>, the Statement is not in the nature of an invoice. The Statement also states that it is for informational purposes only and is not being used to collect a debt, though it does state that IndyMac Federal "required" the Debtors' escrow account to have a certain balance by the end of April, 2009 and included a coupon to be returned with payment in the event that the debtors wished to pay the escrow shortage in a lump sum.

The question is whether the Debtors' allegation that the notice regarding a change in their payment is sufficient to elevate the alleged actions of one or more of the Moving Defendants to a violation of the automatic stay. The court concludes that the allegations contained in the FAC are not

-20-

sufficient.  The court does not reach this conclusion because the
sending of notices regarding post-petition payment increases can
never be a violation of the automatic stay; the court does not
foreclose the possibility that the sending of a notice to the
debtor, whether informational or not, may rise to the level of
coercion or harassment.  As the <u>Zotow</u> court pointed out, whether
communications are prohibited or permitted or whether they rise
to the level of coercion or harassment are fact-driven inquiries
for which there are not bright-line rules.

Instead, the court concludes that the allegations in the FAC
and under the second claim for relief are not sufficient to state
a claim upon which relief may be granted because, as with the
first claim for relief, they do not give each of the Moving
Defendants and the other named defendants fair notice of the
claims being alleged against them.  As with the first claim for
relief, the general allegations in the FAC and in the second
claim for relief are replete with vague references to
"Defendants," "defendants" and "Defendant," with no apparent
effort made to distinguish between each of the eleven defendants
named in the caption of the FAC.

In addition, other than the sending of the Statement
regarding a payment increase, the FAC is devoid of other
allegations which, construed in the light most favorable to the
Debtors, would show coercive or harassing behavior on the party
of any of the Moving Defendants.  As a result, the second claim
for relief is dismissed with leave given to the Debtors to amend

-21-

the FAC to specify which of the named defendants committed acts
which allegedly violated the automatic stay and, to the extent
that they exist, to allege additional facts regarding the sending
of the Notice or other acts committed in violation of the
automatic stay.

3. *Fourth Claim for Relief (Violation of Real Estate Settlement*
*Practices Act (RESPA))*

This claim is dismissed as to OneWest Bank with leave to
amend.

The fourth claim for relief alleges that the "Defendants"
violated RESPA by (1) failing to notify the Debtors when the note
and deed of trust were transferred; (2) assessing more "risk" in
the "Defendants'" escrow analysis calculations than is allowed by
RESPA; (3) improperly accessing the escrow account for payment of
property taxes and insurance; (4) failing to credit back charges
for improperly force-placing insurance; and (5) performing an
improper escrow analysis that resulted in incorrect notices of
increase in payments. However, the Debtors cite only 12 U.S.C. §
2604 in connection with the claim. Section 2604, however,
governs the form and distribution of special information booklets
regarding the nature and costs of real estate settlement
services.

In their written opposition, the Debtors have identified
other sections of RESPA that they assert were violated by the
Moving Defendants. These sections, however, are not identified

-22-

in the FAC.  In the context of a motion for a more definite
statement under Fed. R. Civ. P. 12(e), the Ninth Circuit has
stated, "even though a complaint is not defective for failure to
designate the statute or other provision of law violated, the
judge may in his discretion . . . require such detail as may be
appropriate in the particular case." McHenry v. Renne, 84 F.3d
1172, 1179 (9th Cir. 1996).  Although the Moving Defendants have
filed a motion for judgment on the pleadings rather than for a
more definite statement, the court finds that McHenry v. Renne is
applicable here, insofar as a motion for a more definite
statement and a motion for judgment on the pleadings are both
concerned with the sufficiency of the plaintiff's pleading.  In
this case, the court dismisses the fourth claim for relief with
leave to amend as to the specific provisions of RESPA that the
Debtors assert were violated by one or more of the named
defendants because RESPA is a complex statute that covers several
sections of Chapter 27 of the United States Code.  Requiring the
Debtors to specify the specific provisions that they believe were
violated prevents both the Moving Defendants and the court from
guessing which provisions of RESPA the Debtors believed the
Moving Defendants violated and gives fair notice to all parties
and the court of the claims being asserted.

     The fourth claim for relief is also dismissed with leave to
amend because, like the first and second claims for relief, it is
replete with vague references to "Defendants" and "defendants"
without any distinction between the eleven named defendants in

-23-

the caption of the FAC.  The allegations underlying the fourth
claim for relief do not give the remaining defendants fair notice
of the claims being asserted against them.  As a result, the
fourth claim for relief is dismissed with leave given to the
Debtors to amend the claim to specify which of the remaining
named defendants violated RESPA and the specific manner in which
they violated RESPA.

### 4.  *Fifth Claim for Relief (Civil Conspiracy)*

This claim is dismissed as to OneWest Bank with leave to
amend.

Civil conspiracy is not an independent tort.  Instead it is
"merely a mechanism for imposing vicarious liability; it is not
itself a substantive basis for liability.  Each member of the
conspiracy becomes liable for all acts done by other pursuant to
the conspiracy, and for all damages caused thereby."  <u>Favila v.
Katten Muchin Rosenman LLP</u>, 188 Cal.App.4th 189, 206 (2010).  A
civil conspiracy is "activated by the commission of an actual
tort."  <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7
Cal.4th 503, 511 (1994).

In addition, "[t]he basis of a civil conspiracy is the
formation of a group of two or more persons who have agreed to a
common plan or design to commit a tortious act.  The conspiring
defendants must also have actual knowledge that a tort is planned
and concur in the tortious scheme with knowledge of its unlawful
purpose.  However, actual knowledge of the planned tort, without

-24-

1  more, is insufficient to serve as the basis for a conspiracy

2  claim.  Knowledge of the planned tort must be combined with

3  intent to aid its commission."  _Id._ (citing _Kidron v. Movie_

4  _Acquisition Corp._, 40 Cal.App.4th 1571, 1582 (1995).

5      Here, the Debtors allege that "Defendants" engaged in a

6  conspiracy for the purpose of "recouping pre-petition claims from

7  post-petition estate property resulting in systematic injury to

8  debtors" by means the allegedly improper escrow analyses

9  described above, concealing the post-petition collection of pre-

10 petition claims, and objecting to confirmation of chapter 13

11 plans based on the improper escrow analyses.  These allegations,

12 however, are not sufficient to state a claim that any of the

13 named defendants were involved in a civil conspiracy.  The

14 Debtors have not alleged any agreement between any of the named

15 defendants to a common plan or design to commit a tortious act,

16 nor have they alleged that any of the named defendants had actual

17 knowledge that a tort was planned and that they concurred in the

18 tortious scheme with knowledge of its unlawful purpose.  This

19 claim for relief also suffers from the same defects as the first,

20 second and fourth claims for relief in that it also fails to

21 distinguish between any of the named defendants with respect to

22 the alleged civil conspiracy.  For these reasons, the court

23 dismisses the fifth claim for relief as to OneWest Bank with

24 leave to amend.

25     Rather than issue judgment in favor of OneWest Bank, the

26 court dismisses the first, second, fourth and fifth claims for

27

28                              -25-

relief in the FAC with leave to amend as to OneWest Bank because the court finds that it is possible that the deficiencies identified in the FAC may be cured with further factual enhancement. The court cautions the Debtors that the second amended complaint must clearly identify which of the remaining named defendants violated their legal rights and the specific manner in which they violated those rights; if the Debtors fail to do so those defendants who are not clearly connected with the acts complained of will be dismissed without leave to amend.

The court will issue a separate order consistent with this ruling.

Dated: JUL 1 4 2011

United States Bankruptcy Judge

-26-

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF SERVICE

      The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served by mail to the following entities listed at the address(es) shown below.

Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814

Christopher Giaimo
1050 Connecticut Ave NW #1100
Washington, DC 20036

Joseph Chairez
600 Anton Blvd #900
Costa Mesa, CA 92626

Lauren Danielson
515 S Figueroa St 9th Fl
Los Angeles, CA 90071

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Terry Loftus
1770 4th Ave
San Diego, CA 92101

DATED:   7/15/11

By: _____
      **Deputy Clerk**   **Cathy Guyer**